# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BRACIE T. WELDON,

                Plaintiff

v.                              Case No. 1:12-cv-279-HJW

WARREN COUNTY CHILDREN
SERVICES, et al,

                Defendants

## ORDER

       This matter is before the Court upon the defendant's "Motion to Dismiss" (doc. no. 11), which plaintiff opposes. Having fully considered the record, including the pleadings, the parties' briefs, and the oral arguments heard in conjunction with the pretrial conference, the Court will <u>grant</u> the motion for the following reasons:

## I. Background

       Plaintiff Bracie T. Weldon was hired by the Warren County Children Services to work as a case manager beginning February 28, 2011. She did not make it through her probationary period and was terminated less than six months later on September 27, 2011 for "failing

1

to meet the standards of the Protective Services Caseworker position" (doc. no. 26 at 22). She indicates her employer found her "to be ineffective in her work position through lack of production" but claims her lack of production was due to "the oppressive attitudes and conduct toward [her]" (Id. at 9, ¶25). She complains that a female supervisor criticized her attire "while other employees are permitted to wear clothing that has been characterized as inappropriate when worn by plaintiff" (Id. at 7, ¶ 18). Plaintiff concludes that she was subjected to "discriminatory treatment . . . because of her sex and race" (Id. at 3, ¶1).

On October 11, 2011, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race and sex discrimination (doc. no. 17-1 at 20). On January 27, 2012, the EEOC mailed a "Dismissal and Notice of Suit Rights" letter, advising plaintiff that if she wished to file a claim in federal court, she had 90 days to do so. See 42 U.S.C. § 2000e-5(f)(1).

On April 5, 2012, the plaintiff timely filed a six-count federal complaint, alleging race discrimination and retaliation under Title VII,

and four state claims for slander per se, slander per quod, wrongful discharge, and negligent infliction of emotional distress (doc. no. 1). She sued her former employer (Warren County Children Services) and various individual defendants (two supervisors, three county commissioners, the Executive Director of Warren County Jobs & Family Services, and "various John Does and Jane Does").

On June 4, 2012, the defendants moved to dismiss certain claims and defendants (doc. no. 11). Plaintiff responded (doc. no. 18), and defendants replied (doc. no. 23). On July 5, 2012, plaintiff moved to amend and attached a proposed "First Amended Complaint" (doc. no. 17). The defendants opposed leave to amend, largely on grounds of futility (doc. no. 22).

On August 2, 2012, the Court held a pretrial conference and heard oral arguments on the pending motions. Plaintiff's proposed "First Amended Complaint" fixed one minor defect (i.e. a typographical error regarding a statute number) pointed out by defendants, reasserted all the same claims, and added a claim for "intentional infliction of emotional distress" in a new Count Seven. As Rule 15(a)(2) of the

Federal Rules of Civil Procedure provides that courts should freely grant leave to amend when justice so requires, and as plaintiff sought to amend fairly early in this case, the Court granted leave to amend (doc. no. 25). The "First Amended Complaint" was filed in the record (doc. no. 26).

In conjunction with the pretrial conference, the Court heard oral argument on the defendants' "Motion to Dismiss" (doc. no. 11) as applied to the "First Amended Complaint." While an amended complaint supersedes the prior pleading, and any motions pertaining to the prior pleading are generally rendered moot, the defendants pointed out that their arguments for dismissal apply equally to the plaintiff's reasserted claims. Moreover, the defendants' reply brief specifically addressed the "First Amended Complaint." Defense counsel expressed concern about the expense to the parties of repetitive re-briefing.

Under the circumstances, and given that the parties were afforded full opportunity to orally argue the issues as applied to the "First Amended Complaint," the Court found that re-briefing was not necessary. In the interests of justice, and to avoid duplication of filings

and needless expense to all parties, the Court ordered that the defendants' motion to dismiss be reinstated with respect to the "First Amended Complaint." The issues in that motion, as orally argued before the Court with respect to the First Amended Complaint, will be addressed below.

## II. Standard of Review

Motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for which relief may be granted test the sufficiency of a complaint, and the first step is to identify any conclusory allegations. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although the court must accept well pled factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as

true a legal conclusion couched as a factual allegation." <u>Bell Atlantic</u>, 550 U.S. at 555.[1]

Initially, plaintiff suggests that "the defendants have attacked portions of the Complaint by presenting supposition of matters outside the Complaint" and that "[a]s a result of such materials contained and attached to the Defendants' motion, it is moved by Plaintiff that the motion to dismiss be stricken or . . . to treat said motion as one for summary judgment" (doc. no. 18 at 1-2).

It is inappropriate for plaintiff to assert a "motion" in a responsive brief. Plaintiff's suggestion is also meritless. In conformity with the local rules, the defendants attached a copy of an unpublished opinion to their motion, not any "evidence" (doc. no. 11-1). See S.D. Ohio Local Rule 7.2(b)(4) ("if unreported or unofficially published opinions are cited, copies of the opinions shall be made available . . . by opposing counsel"). A citation to an unpublished opinion and an attached courtesy copy provide no reason to treat the defendant's motion to dismiss as one for summary judgment. The Court will consider the

---

[1]Although both parties also cite Rule 12(b)(1) (see doc. nos. 11 at 1; 18 at 3), subject-matter jurisdiction is not at issue here.

motion to dismiss under Rule 12(b)(6).

## III. Discussion

### A. Plaintiff's Initial Reference to Inapplicable Statutes

In the introductory paragraph of the "First Amended Complaint," plaintiff recites that she brings "this employment discrimination action . . . under 42 U.S.C. §1981a, 42 U.S.C. §1983, 42 U.S.C. §2000e, et seq., 29 U.S.C. §621, et seq., and Ohio Revised Code §4122, et seq., based upon defendants' discriminatory treatment of plaintiff because of her sex and race creating a hostile work environment and retaliation" (doc. no. 26 at ¶1). Much of that paragraph does not appear to correspond with the rest of the allegations in the First Amended Complaint.

Defendants correctly point out that some of these statutes are not applicable and that plaintiff has not raised any claims of sex or age discrimination in her "seven causes of action" set forth in the First Amended Complaint. Given that plaintiff's introductory paragraph mentions "discriminatory treatment of plaintiff because of her sex," the defendants move to dismiss because the First Amended Complaint sets forth no facts to support such a claim. Plaintiff's counsel conceded in

the written response, and again at oral argument, that plaintiff is *not* asserting a claim of sex discrimination. For clarity's sake, and to the extent such a claim could be read into the complaint, such claim is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief.

Similarly, although the introductory paragraph recites that plaintiff (who is 36 years old) brings claims under 29 U.S.C. § 621, et seq., the Age Discrimination and Employment Act ("ADEA"), the rest of the First Amended Complaint alleges no facts whatsoever regarding age discrimination. Plaintiff does not allege a claim of age discrimination in any of her "seven causes of action" set forth in the First Amended Complaint. The ADEA has nothing to do with this case.[2]

As for the initial reference to 42 U.S.C. §§ 1981(a) and 1983, plaintiff's "seven causes of action" set forth in the rest of the First Amended Complaint do not mention these statutes. Her Title VII claim in Count One alleges only that her employer "sought to displace [her]

_____

[2] Plaintiff also erroneously relies on 29 U.S.C. § 626, which concerns "recordkeeping, investigation, and enforcement" under the ADEA, as a basis for "jurisdiction" (doc. no. 26 at 3, ¶ 2).

8

based upon race" (doc. no. 26 at 10, ¶31). In other words, she is alleging a discrete act of discriminatory discharge, not any "class-wide discrimination." See <u>Hunter v. Secretary of U.S. Army,</u> 565 F.3d 986, 994-95 (6th Cir. 2009) (explaining the difference between an individual's Title VII claim of discrete-act discrimination and a § 1981 action for class-wide discriminatory practices). In her brief, plaintiff devotes only a single sentence to this issue, succinctly suggesting in conclusory fashion that these statutes "apply" (doc. no. 18 at 4). She cites no authority, offers no explanation or legal argument, and points to no facts in support. To the extent the introductory paragraph recites that plaintiff brings claims under these statutes, such claims have been insufficiently pled and are subject to dismissal. Plaintiff acknowledges that she only brings the claims listed in her seven causes of action (doc. no. 18 at 1).

The introductory paragraph further recites that plaintiff brings a claim under Ohio R.C. § 4122 et seq., but this appears to be another typographical error. Plaintiff is presumably referring to Ohio R.C. § 4112, given that Count Five asserts a state claim of wrongful discharge.

As for the introductory paragraph's reference to 42 U.S.C. §2000e, et seq., the First Amended Complaint does plead claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The Court will next consider the defendants' arguments regarding the seven causes of action actually alleged in the First Amended Complaint.

## B. Title VII Claims for Damages May Only Be Brought Against Employer

Plaintiff brings her first cause of action ("race discrimination") under Title VII, but refers to unspecified plural "defendants." The defendants correctly point out that plaintiff may only assert Title VII claims for compensatory damages against her employer "Warren County Children Services" and that no actionable Title VII claims exist against any supervisors or other defendants individually. Johnson v. Univ. of Cincinnati, 215 F.3d 561, 571 (6th Cir. 2000) (holding that claims for compensatory damages under Title VII can only be brought against the employer);[3] Wathen v. General Elec. Co., 115 F.3d 400, 404 (6th Cir. 1997) (holding that a supervisor who does not otherwise qualify as an "employer" cannot be held individually liable under Title VII);

_____

[3] **Plaintiff does not ask for any injunctive relief.**

**Conant v. Delaware Cty. Bd. of Com'rs**, 2011 WL 4383444 (S.D.Ohio) (same). Plaintiff appears to concede this (doc. no. 18 at 5). Thus, dismissal of plaintiff's Title VII claim in Count One as to the individual defendants is appropriate pursuant to Fed. R. Civ. P. 12(b)(6).

## C. Failure to Exhaust Certain Claims

### 1. Retaliation

Plaintiff's second cause of action ("retaliation") does not refer to any statute, but plaintiff explains in her brief that she brings this claim under Title VII (doc. no. 18 at 5). Title VII prohibits retaliation against an employee because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" in connection with an allegedly unlawful employment practice. 42 U.S.C. § 2000e-3(a). Plaintiff did not indicate in her EEOC Charge that she did any of these things.

As a threshold matter, the defendants assert that plaintiff failed to raise this claim in her EEOC Charge, and thus, failed to administratively exhaust it. "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [her] EEOC charge." **Younis v.**

**Pinnacle Airlines, Inc.,** 610 F.3d 359, 361 (6th Cir. 2010) (citing **Alexander v. Gardner Denver Co**., 415 U.S. 36, 47 (1974)); see also, **Blessing v. Ohio University**, 2011 WL 6076327, *9 (S.D.Ohio).

Plaintiff initially contends that if the Court considers plaintiff's Charge (which she attached to her own complaint), the Court must consider the exhaustion issue on summary judgment (doc. no. 18 at 5, ¶ C). Contrary to plaintiff's assertion, the defense of failure to exhaust administrative remedies may appropriately be resolved by motion to dismiss under Rule 12(b)(6). See **Youseff v. Ford Motor Co., Inc.**, 2000 WL 799314 at *3, n. 3 (6th Cir. 2000); **Coleman v. Ohio State Univ. Med. Center**, 2011 WL 3273531, *8 (S.D.Ohio) (dismissing Title VII claim for failure to exhaust); **Zubovich v. Wal-Mart Stores East, Inc**., 2010 WL 1742117, *3 (N.D.Ohio) (same). In doing so, the Court may appropriately consider the Charge without converting to summary judgment. **Weiner v. Klais & Co., Inc.**, 108 F.3d 86, 88-89 (6th Cir. 1997); **Toth v. Grand Truck R.R.**, 306 F.3d 335, 348 (6th Cir. 2002) (courts may take judicial notice of orders issued by administrative agencies, such as the EEOC, pursuant to their delegated authority).

Administrative exhaustion is a condition precedent to filing Title VII claims in federal court. <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 392 (1982) (explaining that this is not "jurisdictional"). "Before bringing a Title VII claim in federal court, a litigant must raise the claim in a . . . charge filed with the EEOC." <u>Hollimon v. Shelby County</u>, 2009 WL 1119282, *3 (6th Cir. (Ky); <u>Amini v. Oberlin College</u>, 259 F.3d 493, 498 (6th Cir. 2001). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).

Although plaintiff urges the Court to ignore the statutory exhaustion requirement, it is well-settled that filing an EEOC complaint is a necessary prerequisite to filing a Title VII suit in federal court. <u>Davis v. Sodexho, Cumberland College Cafeteria,</u> 157 F.3d 460, 463 (6th Cir. 1998); <u>Amini</u>, 259 F.3d at 498. The purpose of an EEOC charge is to give "notice to the alleged wrongdoer of its potential liability" and enable the EEOC "to initiate conciliation procedures in attempt to avoid litigation." <u>Dixon v. Ashcraft</u>, <u>392 F.3d 212</u>, 217 (6th Cir. 2004). Courts have repeatedly held that the failure to indicate the type of

discrimination being claimed on a charge form is more than a "mere technicality," and may be grounds for dismissal of a claim. <u>Abeita v. TransAmerica Mailings, Inc.</u>, 159 F.3d 246, 250 (6th Cir. 1998); <u>Davis</u>, 157 F.3d at 462 (observing that "the charge filing requirement would be written out of the law, and the triggering and conciliation functions disabled if the plaintiff's arguments were accepted").

Employees who file EEOC charges often do so without counsel, and thus, the exhaustion requirement may be satisfied if the claim can be reasonably expected to grow out of the factual allegations in the EEOC charge. <u>Randolph v. Ohio Dep't of Youth Servs.</u>, 453 F.3d 724, 732 (6th Cir. 2006); <u>Davis</u>, 157 F.3d at 463. The Sixth Circuit has held that claims are "reasonably related" for purposes of exhaustion when facts related to the charged claim "would prompt the EEOC to investigate a different, uncharged claim." <u>Weigel v. Baptist Hosp. of East Tenn.</u>, 302 F.3d 367, 380 (6th Cir. 2002).

Courts will construe charges liberally, but a charge must give the employer adequate notice of the nature of the employee's allegations and an opportunity to investigate and respond. <u>Coleman v. Ohio State</u>

**Univ. Med. Center**, 2011 WL 3273531, *8 (S.D.Ohio). Although plaintiff indicates in her brief that she was "pro se" and "sought to make a retaliation claim before the EEOC" (doc. no. 18 at 5), her EEOC Charge reflects that plaintiff checked only the boxes for sex and race "discrimination." She did not check "retaliation." She also did not provide facts in the narrative section of her Charge indicating she had engaged in any protected activity prior to her discharge (doc. no. 26 at 20). When alleged retaliation occurs before the filing of the Charge, it is not excepted from Title VII's exhaustion requirement. See **Abeita**, 159 F.3d at 254 (retaliation claims based on conduct that occurred before the charge is filed must be included in the charge); **Kurtz v. McHugh,** 423 Fed.Appx. 572, 576 (6th Cir. 2011) (same).

"Discrimination and retaliation are distinct claims which must be clearly identified in the charge" and a failure to check the box for retaliation coupled with a failure to mention retaliation or recite facts alluding to such charge on the form constitutes a failure to exhaust administrative remedies. See, e.g., **Adamov v. U.S. Bank Natl. Assn.**, 776 F. Supp2d 447, 450-452 (W.D. Ky. 2011) (dismissing unexhausted

retaliation claim because plaintiff's EEOC Charge alleged discrimination, but failed to mention any retaliation).

Plaintiff's Charge alleged disparate treatment, discrimination due to race and sex, and complained of her termination (doc. no. 26 at 20). She did not mention "retaliation" or indicate she engaged in any protected activity, and her narrative in the Charge would not prompt the EEOC to investigate a separate claim of retaliation. See <u>Younis</u>, 610 F.3d at 363. Her employer was not given any notice of such claim, and the EEOC did not issue plaintiff a "Right to Sue" for such claim. Although plaintiff now argues that she intended to allege retaliation based *on someone else's* earlier charge (doc. no. 26 at 9, ¶ 27), plaintiff cites no authority for the notion that she could do so. Plaintiff did not mention any facts regarding protected activity or retaliation in her Charge and cannot blame the EEOC for her own omission. Mere "pro se" status does not excuse the failure to exhaust a claim. Plaintiff has not shown any plausible basis for equitable relief from the exhaustion requirement.

The Sixth Circuit Court of Appeals has cautioned that allowing

unexhausted claims to proceed in federal court would deprive the employer of notice and frustrate the EEOC's investigatory and conciliatory role. <u>Younis,</u> 610 F.3d at 362. Plaintiff's retaliation claim is unexhausted and subject to dismissal. <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110 (2002) (observing that discrete retaliatory act occurs, for purposes of charge filing requirement of Title VII, upon date it happens, such that plaintiff must file timely EEOC charge or lose ability to recover for it in Title VII action); 42 U.S.C.A. § 2000e–5(e)(1).

## 2. Hostile Work Environment

Although none of the seven causes of action in the First Amended Complaint indicate that plaintiff is raising a "hostile work environment" claim, the defendants note that the introductory section of the First Amended Complaint mentions "hostile work environment." To the extent plaintiff may be attempting to assert such a claim, defendants move to dismiss it for lack of exhaustion because plaintiff did not raise it in her EEOC Charge. Instead, her Charge alleged that she was subjected to "different terms and conditions" and cited several instances of alleged disparate treatment, i.e. her female supervisor told

her she dressed inappropriately (i.e. like a "stripper"), did not train her, did not give plaintiff an interim evaluation, and gave plaintiff only a negative evaluation on her last day of employment.

Under Title VII, two types of actions may be brought: (1) "discrete discriminatory acts," and (2) claims alleging a "hostile work environment." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110-115 (2002) ("Hostile environment claims are different in kind from discrete acts"). A hostile work environment claim involves "harassment that unreasonably interferes with [a person's] work performance and creates an objectively intimidating, hostile, or offense work environment." Grace v. USCAR, 521 F.3d 655, 678 (6th Cir. 2008). Where a plaintiff alleges only discrete acts of discrimination in a Charge, the charge may not be construed as raising a "hostile work environment" claim. Younis, 610 F.3d at 362; Hunter, 565 F.3d at 993-94 (alleged denials of training were discrete acts of discrimination, rather than acts constituting a hostile work environment); Jones v. City of Franklin, 309 Fed.Appx. 938, 943-44 (6th Cir. 2009) (distinguishing discrete-discriminatory-act claims from hostile-work-environment

claims, and observing that "[n]o decision in this circuit has held that EEOC charges regarding discrete acts of discrimination are alone sufficient to put the EEOC on notice of a hostile-work-environment claim"), cert. denied, 130 S.Ct. 800 (2009).

In her Charge, plaintiff complained of several discrete acts of "disparate treatment" but did not allege a "hostile work environment." Younis, 610 F.3d at 362 ("the inclusion in an EEOC charge of a discrete act or acts, standing alone, is insufficient to establish a hostile-work-environment claim for purposes of exhaustion"); Brown v. City of Cleveland, 294 Fed. Appx. 226, 234-35 (6th Cir. 2008) (holding that an EEOC investigation of a hostile work environment claim could not reasonably be expected to result from a charge describing the denial of a promotion).

Plaintiff may not expand her claims beyond the scope of her Charge and the EEOC's investigation. See Scott v. Eastman Chem Co., 275 Fed. Appx. 466, 474-75 (6th Cir. 2008) (affirming dismissal of retaliation and hostile work environment claims because they were "not sufficiently described in her EEOC charge, were not investigated

by the EEOC, and were not reasonably within the scope of the EEOC investigation"); <u>McFagdon v. Fresh Market, Inc</u>., 2005 WL 2768996, *4-5 (W.D. Tenn.) (dismissing plaintiff's claims for retaliation and hostile work environment because plaintiff did not raise them in her charge).

**D. Negligent Infliction of Emotional Distress (Count Six)**

Next, the defendants move to dismiss plaintiff's sixth cause of action, which plaintiff incompletely captions as "infliction of emotional distress." Plaintiff alleges that the "[d]efendant terminated her employment without benefit of a proper performance review" and that such conduct was "negligent" (doc. no. 26 at 14, ¶¶ 52-53). Although plaintiff also asserts in conclusory fashion that this conduct "can be considered extreme and outrageous" (¶ 56), courts need not accept as true "a legal conclusion couched as a factual allegation." <u>Bell Atlantic</u>, 550 U.S. at 555. Defendants aptly point out that plaintiff's "amended complaint continues to plead only negligent conduct" (doc. no. 23 at 2).

As a matter of law, Ohio law does not recognize negligent infliction of emotional distress in the employment termination context. <u>Doe v. SexSearch.com</u>, 551 F.3d 412, 417 (6th Cir. 2008) (observing that

Ohio courts have limited "recovery for negligent infliction of emotional distress to instances where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril") (citing <u>Heiner v. Moretuzzo</u>, 73 Ohio St.3d 80, 86 (1995); <u>Gearing v. Nationwide Ins. Co.</u>, 76 Ohio St.3d 34, 40 (1996) ("Ohio courts have limited recovery for claims alleging negligent infliction of emotional distress to situations such as where the plaintiff was a bystander to an accident or was in fear of physical consequences to his own person").

Plaintiff does not allege that she witnessed or experienced a "dangerous accident," or that she feared any "physical peril." Consequently, she has not stated a claim for negligent infliction of emotional distress under Ohio law. See, e.g., <u>Young v. Dayton</u>, 2012 WL 1680100, *9 (S.D.Ohio) (observing that Ohio does not recognize such a claim in the employment context and explaining that "a claim of negligent infliction of emotional distress simply does not fit the facts at issue in this case"). Count Six is subject to dismissal as a matter of law.

In her response, plaintiff tries to recharacterize this cause of action as *intentional* infliction of emotional distress. She argues that

her sixth cause of action has been "clarified as intentional conduct" (doc. no. 18 at 6). Plaintiff's single sentence characterization is conclusory, ignores the facts alleged in those counts, and fails to address the defendants' legal arguments.

Taking all well-pleaded non-conclusory factual allegations as true, Counts Six complains of emotional distress arising from her employment termination, not any conduct that rises to the "extreme and outrageous" level necessary to state an actionable claim of intentional infliction of emotional distress. See Sinclair v. Donovan, 2011 WL 5326093, *11 (S.D.Ohio) (J.Spiegel) ("without an allegation of conduct that, as a matter of law, is extreme and outrageous, plaintiffs' claim must be dismissed"); Miller v. Currie, 50 F.3d 373, 377-78 (6th Cir. 1995) ("It is well accepted that intentional infliction of emotional distress claims may entirely appropriately be dealt with . . . in a motion to dismiss" and observing that a trial court may rule, as a matter of law, that certain conduct does not rise to the extreme level necessary to state a claim); Hanly v. Riverside Methodist Hospital, 78 Ohio App.3d 73, 82 (1991) (the alleged conduct must be "extreme and outrageous");

**Mann v. Cincinnati Enquirer**, 2010 WL 3328631, *5 (Ohio App. 1st Dist.) (affirming dismissal of claim of intentional infliction of emotional distress for failure to state a claim because the conduct alleged by plaintiff did not rise to the "extreme and outrageous" level). Regardless of how characterized, Count Six is subject to dismissal for failure to state a claim pursuant to Rule 12(b)(6).

Even if plaintiff "intends" Count Six to allege "intentional" rather than "negligent" conduct, defendants also point out that the political subdivision defendants are immune from intentional tort claims pursuant to Ohio R.C. § 2744 (doc. no. 26 at 3). Moreover, Count Six essentially duplicates Count Seven, which is addressed below.

### E. Intentional Inflection of Emotional Distress (Count Seven)

Plaintiff's First Amended Complaint adds a new claim incompletely captioned as "infliction of emotional distress." This claim alleges that "Defendant Patricia L. Jacobs used her authority as Executive Director for Warren County Children Services on behalf of said agency to cause Plaintiff's employment to be terminated" (doc. no. 26 at 15, ¶ 58). In her response, plaintiff indicates she intends this to be

a claim of *intentional* infliction of emotional distress (doc. no. 18 at 6).

Like Count Six, Count Seven does not allege conduct rising to the

"extreme and outrageous" level necessary to state an actionable claim

of intentional infliction of emotional distress. <u>Hanly</u>, 78 Ohio App.3d at

82.

Moreover, the political subdivision defendants are immune from

such "intentional" tort claims pursuant to "The Political Subdivision

Tort Liability Act," codified in Ohio R.C. § 2744, et seq. Specifically,

Ohio R.C. 2744.02(A)(1) provides that:

> "a political subdivision is not liable in damages in
> a civil action for injury, death, or loss to person or
> property allegedly caused by any act or omission
> of the political subdivision or an employee of the
> political subdivision in connection with a
> governmental or proprietary function."

"As a general rule, political subdivisions and their employees are not

liable for injury caused by any action of the subdivision or its employees

in connection with a governmental function." <u>Woods v. Miamisburg City</u>

<u>Schools</u>, 254 F.Supp.2d 868, 879-80 (S.D. Ohio 2003) (dismissing tort

claims pursuant to Rule 12(b)(6) based on statutory immunity).

Although Ohio R.C. § 2744.02(B) provides some exceptions to

24

immunity, the Ohio Supreme Court has held that this statute does not provide an exception for intentional infliction of emotional distress or other intentional torts. <u>Hubbard v. Canton City School Bd. of Educ.</u>, 97 Ohio St.3d 451, 453 (2002); <u>Wilson v. Stark Cty. Dept. of Human Serv.</u>, 70 Ohio St.3d 450, 452 (1994) ("[t]here are no exceptions to immunity for . . . intentional infliction of emotional distress"). This claim is subject to dismissal as a matter of law.

## F.   Slander Per Se (Count Three) and Slander Per Quod (Count Four)

Plaintiff has named various county officials as defendants (i.e. Jacobs, Barger, Gully, Ariss, South, Young, and various John/Jane Does). In Counts Three and Four, plaintiff alleges that the "individual defendants" spoke "false and defamatory" words about her (doc. no. 26 at 11, ¶¶ 38, 42-43). Plaintiff does not identify any particular person as the speaker of the alleged slander. The factual "background" section alleges only that a single unidentified "management official" made a single statement directly to plaintiff, i.e., that plaintiff "was wearing clothing that suggested that she was a prostitute" (¶ 20).

Regardless of which defendant may have spoken those alleged

words, the defendants assert that any "political subdivision" defendants, including individual defendants sued in their official capacities, are entitled to immunity under Ohio law for intentional torts, thereby warranting dismissal of such claims against them pursuant to Fed. R. Civ. P. 12(b)(6). Defendants cite numerous Ohio cases holding that defamation/slander is classified as an intentional tort and that there are no exceptions to immunity for intentional torts (doc. no. 11 at 10). See, e.g., Cooper, 81 Ohio App.3d at 737; Holzbach v. Jackson Twp., 2000 WL 1035798 (Ohio App. 5 Dist), discretionary review denied, 90 Ohio St.3d 1468 (2000).

In her response, plaintiff argues that one of the five exceptions to immunity applies (doc. no. 18 at 8). See Ohio R.C. § 2744.02(B)(2) (negligent performance of proprietary functions). Plaintiff italicizes the term "proprietary functions" but does not explain what proprietary function is allegedly involved or why this exception would apply. Ohio R.C. 2744.01(G)(1)(a-b) provides:

> "Proprietary function" means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:

> **(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;**
> **(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.**

Division (G)(2) provides a non-exclusive list of proprietary functions, none of which are pertinent here. Division (C)(2)(m) specifies that "the operation of a job and family services department or agency" is a governmental function, rather than a proprietary function.

Plaintiff does not explain how the intentional torts alleged in Counts Three and Four (the slander claims) would involve "negligent" performance of any "proprietary" function for purposes of Ohio R.C. § 2744.02(B)(2), nor does she cite any relevant authority. Plaintiff has not shown that this exception applies, and thus, the immunity analysis concludes here. See <u>Hortman v. Miamisburg</u>, 110 O.St.3d 194, 197 (2006) (explaining that if no exception applies, the immunity analysis need not go any further). The "political subdivision" defendants are entitled to immunity on Counts Three and Four.

In her response, despite arguing that an exception applies,

plaintiff appears (inconsistently) to concede the immunity issue by indicating that her slander claims are only "against the individual defendants" (doc. no. 18 at 7). At oral argument, plaintiff's counsel explained that he meant the two defendants (Barger and Jacobs) who are sued "individually" in the First Amended Complaint. The defendants have not argued for dismissal of the slander claims against Barger and Jacobs "individually" based on immunity (doc. no. 23 at 4).

**V.   Conclusion**

For the foregoing reasons, the defendants' motion to dismiss is well-taken, and the claims and parties subject to dismissal are set forth below. The Court observes that this does not dispose of the entire case. The plaintiff's Title VII race discrimination claim in Count One remains against the employer. Plaintiff's slander claims in Counts Three and Four remain against Barger and Jacobs, "individually." Also, the defendants' motion to dismiss did not address the fifth cause of action for wrongful discharge under state law, Ohio R.C. § 4112, and thus, that claim also remains.

Accordingly, the defendants' "Motion to Dismiss" (doc. no. 11)

pursuant to Rule 12(b)(6) is GRANTED, as follows:

> 1. Any "claims" of sex and age discrimination, or under 42 U.S.C. §§ 1981 and 1983, are insufficiently pled and are DISMISSED for failure to state a claim;

> 2. Count One (Title VII race discrimination) pertains only to the employer and is DISMISSED as to any individual defendants;

> 3. the Title VII retaliation and hostile work environment claims are DISMISSED for failure to exhaust administrative remedies;

> 4. Counts Three and Four (state slander claims) are DISMISSED on grounds of immunity pursuant to Ohio R.C. § 2744, except as to the two defendants sued "individually;"

> 5. Count Six (negligent infliction of emotional distress) is DISMISSED for failure to state a claim;

> 6. Count Seven (intentional infliction of emotional distress) is DISMISSED for failure to state a claim and on grounds of immunity pursuant to Ohio R.C. § 2744.

This case shall proceed as scheduled.

IT IS SO ORDERED.

s/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court
