**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

**BRACIE T. WELDON,**

        **Plaintiff**

**v.**                              **Case No. 1:12-cv-279-HJW**

**WARREN COUNTY CHILDREN
SERVICES, et al,**

        **Defendants**

<u>**ORDER**</u>

       **Pending is the defendants' "Motion for Summary Judgment" (doc. no. 36), which plaintiff opposes. Defendants have filed proposed findings of fact and conclusions of law, which plaintiff has highlighted as true, false, or irrelevant (doc. no. 53). Also pending are the defendants' "Objections" to consideration of certain exhibits attached to plaintiff's response (doc. no. 47). Having fully considered the record, including the parties' briefs, proposed findings, exhibits, objections, and relevant authority, the Court will <u>sustain</u> the objections and <u>grant</u> the motion for summary judgment for the following reasons:**

<u>**I. Background and Procedural History**</u>

       **Warren County hired Bracie Weldon as a "Protective Services Caseworker II" in its Department of Job and Family Services beginning February 28, 2011 (doc. no. 53 at ¶¶ 1-2). Her job duties included "planning and providing case management and protective services for children and families; addressing issues of safety with children; interacting with staff, law enforcement, prosecutors,**

1

courts, caregivers, and other service providers; preparing for and appearing in court; preparing timely documents ordered by the court; conducting and preparing interstate and intrastate home evaluations for placement; developing and amending case plans consistent with statutory requirements; and preparing and maintaining case records as required by law" (¶ 6). Despite holding herself out as an experienced caseworker with four years of relevant experience, plaintiff did not make it through her initial probationary period and was terminated less than six months later on September 27, 2011 for the stated reason of poor job performance ("failing to meet the standards required of the position") (¶¶ 3-5).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, which issued a "Dismissal and Notice of Suit Rights" on January 27, 2012 (doc. no. 17-1 at 20). On April 5, 2012, plaintiff timely filed a six-count federal complaint, alleging race discrimination and retaliation under Title VII, and four state claims for violation of Ohio R.C. § 4112, slander per se, slander per quod, and negligent infliction of emotional distress. She sued her former employer (Warren County Children Services or "WCCS") and various individual defendants. Including two supervisors, three county commissioners, the Executive Director of Warren County Jobs & Family Services, and "various John Does and Jane Does."

After the defendants filed a motion to dismiss, plaintiff filed a "First Amended Complaint" which reasserted all the same claims and added a claim for "intentional infliction of emotional distress" in a new Count Seven (doc. no. 26).

2

Defendants renewed their motion to dismiss. After hearing oral arguments, the Court dismissed certain claims and parties (doc. no. 29, Order of November 14, 2012). The parties conducted discovery, and the defendants have now moved for summary judgment on the remaining claims of race discrimination under Title VII, violation of Ohio R.C. § 4112, and slander. This matter has been fully briefed and is ripe for consideration.

## II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides in relevant part:

> A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Under Rule 56, the moving party bears the burden of proving that no genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587. In doing so, courts must distinguish between evidence of disputed material facts and mere "disputed matters of professional judgment," i.e. disagreement as to legal

3

implications of those facts. Beard v. Banks, 548 U.S. 521, 529 30 (2006).

On summary judgment review, the court must determine whether the evidence presents a sufficient dispute of material fact so as to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Id. at 248. A mere scintilla of evidence in support of a party's claim is insufficient to survive summary judgment, as there must be enough evidence that a jury could reasonably find for the party. Id. at 252. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. Defendant's Objections Pursuant to Rule 56(c)(2)

As an initial matter, the Court must consider the defendants' objections (doc. no. 47) to consideration of certain exhibits that plaintiff has submitted with her response brief and affidavit (doc. no. 43). Pursuant to Fed. R. Civ. P. 56(c)(2), a party may object that the material cited to support or dispute a fact may not be considered on summary judgment review. Wiley v. United States, 20 F.3d 222, 226 (6th Cir. 1994) ("Only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."); Steele v. Jennings, 2005 WL 2124152, at *3 (S.D.Ohio) (same). The Sixth Circuit Court of Appeals has explained that

4

"[t]he proffered evidence need not be in an admissible form, but its content must be admissible." <u>Bailey v. Floyd Cty. Bd. of Educ.</u>, 106 F.3d 135, 145 (6th Cir. 1997). In other words, "although evidence may be presented for summary judgment in the form of affidavits (which are themselves not generally admissible at trial), inadmissible hearsay evidence contained in an affidavit cannot be considered on summary judgment." <u>Basinger v. CSX Transp., Inc</u>., 91 F.3d 143, 1996 WL 400182, *6 (6th Cir. (Ohio)), cert. denied, 519 U.S. 111 (1997).

Defendants object to plaintiff's Exhibits C1, C2, and C3 (a- d). Exhibit C1 is an unsigned, undated, unsworn typewritten document that purports to be a copy of a letter sent by plaintiff's co-worker Amy Worthy to the County Commissioners, although its salutation indicates only "To Whom it May Concern." Exhibit C2 is an unsworn handwritten document that purports to be a copy of a letter of co-worker Aryan Bogle. Neither document has a letterhead or other such identifying information. Exhibits C3 (a-d) are uncertified transcripts of undated recordings of telephone conversations between plaintiff and Aryan Bogle. The transcripts are not certified, do not indicate who prepared them, and provide no basis to determine that they accurately reflect the substance of the actual recordings, which have not been authenticated or introduced into evidence. See Fed.R.Evid. 1002 ( "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise.").

Defendants point out that all these exhibits are unauthenticated. Authentication is an aspect of relevancy concerned with establishing the

5

genuineness of evidence and is "a condition precedent to admissibility." Fed.R.Evid. 901(a) and advisory committee notes; see, e.g., <u>Fox v. Mich. State P.D.</u>, 173 Fed. Appx. 372, 375 (6th Cir.) (affirming decision to disregard unauthenticated documents that were unsworn and uncertified and therefore inadmissible); <u>King v. Ohio</u>, 2009 WL 73875, *22 (S.D.Ohio) ("exhibits that are not authenticated are not proper evidence in connection with a summary judgment motion"). To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56. See Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2722 (1998); <u>Williams v. United Dairy, Inc</u>., 2005 WL 1077596 at *5 (S.D. Ohio 2005) (striking unauthenticated letter). Unauthenticated audiotapes and related transcripts are inadmissible. <u>Lomax v. Sears, Roebuck & Co.</u>, 2000 WL 1888715, at *5 (6th Cir. (Tenn.)) (per curiam), cert. denied, 532 U.S. 1070 (2001); <u>Steele</u>, 2005 WL 2124152 at *3 (refusing to consider unauthenticated transcripts on summary judgment review).

Defendants point out that these unauthenticated exhibits also contain inadmissible hearsay. Rule 56(c)(4) provides that an "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). It is well-settled that a party opposing a motion for summary judgment may not use hearsay or other inadmissible evidence to create a genuine issue of fact. <u>Weberg v. Franks</u>, 229 F.3d 514, 526 n.13 (6th Cir. 2000) (disregarding allegations based on hearsay

6

rather than personal knowledge); Wiley, 20 F.3d at 225-26 ("hearsay evidence cannot be considered on a motion for summary judgment"); Sperle v. Mich. Dept. of Corrections, 297 F.3d 483, 495 (6th Cir. 2002). Plaintiff has offered no argument regarding these objections. The Court has reviewed the documents submitted by plaintiff and finds that the defendants' objections have merit. In any event, even supposing the documents at issue were authenticated, plaintiff's claims would still be subject to summary judgment.

## IV. Relevant Law

### A. Statutes

Title VII of the Civil Rights Act of 1964 ("Title VII") provides in relevant part that an employer may not "discharge . . . or otherwise . . . discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1). Similarly, Ohio law makes it unlawful "[f]or any employer, because of the ... race ... of any person ... to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio R.C. § 4112.02(A). Typically, resolution of the federal claim will resolve the state claim, as the same evidentiary standards and burdens of proof apply. Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008) ("[a]ll references throughout this opinion to Title VII are therefore equally applicable to the plaintiffs' claims under Ohio Revised Code § 4112").

## B. Evidentiary Burden-Shifting Framework

7

Employment discrimination claims may be based upon direct or indirect evidence. Direct evidence is "evidence that proves the existence of a fact without requiring any inferences," Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 548 (6th Cir. 2004), whereas indirect evidence requires the drawing of an inference, Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003).

For claims based on indirect evidence, the burden-shifting evidentiary framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies. A plaintiff must first establish a prima facie case of discrimination. Upon doing so, the burden shifts to the employer to "articulate a nondiscriminatory reason for its action." Harris v. Metro. Gov. of Nashville & Davidson Cty., Tenn., 594 F.3d 476, 485 (6th Cir. 2010). The plaintiff must then rebut the proffered reason by pointing to sufficient evidence from which the jury may reasonably reject the employer's explanation as pretextual.

The ultimate question in every employment discrimination case is whether the plaintiff was the victim of intentional discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000). Plaintiff must "show that the motive to discriminate was one of the employer's motives" for the adverse action, i.e., was a "motivating factor." Univ. of Texas S.W. Med. Center v. Nassar, 133 S.Ct. 2517, 2525-26, 2013 WL 3155234, *7 (citing 42 U.S.C. § 2000e–2(m) which provides that "an unlawful employment practice is established when the complaining party demonstrates that race . . . was a motivating factor for any employment practice, even though other factors also motivated the practice").

8

## V. Discussion

## A. Count One: Title VII Race Discrimination Claim Against Employer

### 1. No Direct Evidence

Plaintiff has not pointed to any direct evidence of race discrimination. She admits the commissioners made no racially derogatory statements (doc. no. 38, Weldon Dep. at 225, 228 Q: [D]id any of the Commissioners ever make any derogatory racial statements against you? A. No.). Although she attributes discriminatory meaning to an alleged comment by Director Patricia Jacobs (i.e., that "human resources wasn't there for her"), such alleged comment makes no reference to race and would require inferences to be interpreted as plaintiff urges.[1] This comment is not direct evidence. This is the only such comment by Ms. Jacobs (Id. 228 Q: [D]id Patty Jacobs make any other racially derogatory statements to you? A: No, that was the only time I ever spoke to her or had a conversation with her).

Plaintiff also attributes discriminatory meaning to several alleged comments by her supervisor Ms. Barger. For example, plaintiff contends that Ms. Barger once commented that there was too much "drama on her team." Plaintiff acknowledged at deposition that Ms. Barger had explained to her that she was referring to Leeann's husband leaving his kid in the car while he was at the casino" and "the incident with the guy that beat his wife" (Weldon Dep. at 293). Plaintiff now alleges that the comment was "discriminatory" because those individuals happened to be

---

[1] Plaintiff indicates that when she suggested that the HR department file suit for her, Ms. Jacobs advised "they don't do that" (doc. no. 43-2 at 36).

African-American. As the comment make no reference to race and would require inferential leaps to be interpreted as plaintiff urges, it is not direct evidence. Plaintiff also contends that Ms. Barger had advised her that others felt her clothes were too revealing (Weldon Dep. at 160, 164 "my butt cheeks were showing") and that her high-heeled shoes were "stripper-ish and inappropriate for court" (Id. at 195). Even assuming for purposes of summary judgment that the alleged comment was made, inferences would be required to interpret it as any sort of racial comment, and thus, it is not "direct" evidence. Johnson, 319 F.3d at 865. Evidence "is not considered direct evidence unless a[n improper] motivation is explicitly expressed." Grubb v. YSK Corp., 401 Fed.Appx. 104, 109 (6th Cir. 2010). Plaintiff must proceed under the burden-shifting framework for indirect evidence.

### 2. Prima Facie Case

To establish a prima facie case of employment discrimination under a disparate treatment theory with indirect evidence, plaintiff must show that she: (1) is a member of a protected class; (2) was qualified for her job; (3) suffered an adverse employment decision; and (4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. White v. Baxter Healthcare Corp., 533 F.3d 381, 391 (6th Cir. 2008), cert. denied, 129 S.Ct. 2380 (2009). The parties do not dispute that the plaintiff is African-American, was objectively qualified for her job, and that her employment was terminated.

Defendants assert that plaintiff has failed to make out a prima facie case at

10

the fourth step because she has not pointed to evidence that she was "replaced" by someone outside her protected class or "treated differently" than any similarly situated employees. With respect to "replacement," both candidates who were subsequently offered the plaintiff's former job were African-American.

With respect to being "treated differently," the fourth prong requires that the plaintiff show that the employees allegedly treated more favorably were "similarly situated to the plaintiff in all relevant respects." Clay v. U.P.S., Inc., 501 F.3d 695, 703 (6th Cir. 2007). Any comparative employees "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct." Perry v. McGinnis, 209 F.3d 597, 601 (6th Cir. 2000) (citing Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)).

The evidence of record does not reflect that plaintiff was "treated differently" than any similarly situated employees. Plaintiff suggests that Bryan Converse received training that she did not, and that "the difference in . . . Brian Converse from Weldon is race" (doc. no. 43 at 15). Defendants explain that Converse had no previous child welfare experience and was hired as an entry level worker at level I, whereas plaintiff had four years of relevant experience and was hired at level II (doc. nos. 36 at 14; 50 at 6). Plaintiff received over 100 hours of CORE training shortly after starting her job, and in fact, sought to be excused from taking the training. She was not "denied" any training. Defendants point out that when Converse started his job, it was not feasible for him to go without case assignments for five months while waiting for next scheduled CORE training, and

11

thus, Ms. Barger began teaching him the information he would receive in CORE training so he could begin his job duties.[2] Plaintiff has not pointed to any evidence reflecting that any other similarly-situated employee was given training that was refused to plaintiff.

Plaintiff also complains of being counseled for wearing inappropriate attire for court appearances while other employees allegedly wore the same type of attire. The WCCS written dress code required "modesty regarding clothing cut, style and length" (Ex. M). Plaintiff acknowledges that the purpose of the dress code was to convey to the public a professional image and that "short skirts for a professional in [her] position would not be appropriate" (Weldon Dep. at 156-158). On May 13, 2011, plaintiff wore a very short skirt approximately mid-thigh length with slits, four-inch stiletto heeled shoes, and a short vest pulled tightly across her chest (Barger Dep. at 28-29; Weldon Dep. at 166). On another occasion, plaintiff wore very long sparkly rhinestone-studded fake eyelashes and a low-cut top revealing her cleavage. At least one African-American supervisor had observed plaintiff's attire and found it "inappropriate for the work atmosphere, particularly a court appearance" (doc. no. 36, Ex. D Bedgood Affidavit, ¶ 2). Ms. Bedgood explained to plaintiff that the inappropriateness of her attire had nothing to do with her race. Plaintiff admits being counseled about inappropriate attire on several occasions (Weldon Dep. at 159, 162-166, 188).

---

2 Although plaintiff "disputes" these facts (doc. no. 53, ¶ 14), plaintiff has not pointed to any evidence to the contrary. Plaintiff admittedly received the required CORE training. Plaintiff's red-lining created no genuine dispute of material fact.

Plaintiff contends that at deposition, she "identified" comparative photographs of four female employees who allegedly were "similarly situated," meaning that they wore similar clothing to court and were not counseled about wearing inappropriate attire (doc. no. 43 at 14). Plaintiff first claims that an attorney she cannot identify by name allegedly wore the same shoes to court. Defendants point out that such attorney was not a WCCS employee (doc. no. 36 at 15). Such person was not subject to WCCS supervision or its dress code, and her attire is irrelevant to the analysis. Defendants point out that plaintiff's second example (Lisa Wade) is not a WCCS caseworker, is not supervised by Ms. Barger, and does not make court appearances (Id.). For her third alleged example, plaintiff points to a photograph of Arayan Bogle wearing jeans. Plaintiff, however, admits she does not know what Bogle wore for court appearances (Weldon Dep. at 197-200). Finally, although plaintiff suggests that an intake worker named "Allison" wore a sundress to work, defendants indicate this employee was not supervised by Ms. Barger, and in any event, did not attend court without wearing a jacket. In sum, plaintiff has not pointed to evidence reflecting that other "similarly situated" employees were allowed to wear inappropriate clothing to court in violation of the WCCS written dress code. Plaintiff has not shown that she was treated less favorably on such basis.

Although plaintiff complains of being counseled for inappropriate attire, she has not shown that she was "treated differently" than any similarly situated employees due to her race. See, e.g., Weatherby v. Federal Ex., 454 Fed.Appx. 480,

13

488 (6th Cir. 2012), cert. denied, 133 S.Ct. 896 (2013), r'hrg denied,133 S.Ct. 1749 (2013) (affirming summary judgment for employer). At deposition, she merely indicated her subjective belief that she was somehow "discriminated against" because she was fired. This testimony is insufficient to raise any genuine dispute of material fact because it consists merely of her personal belief and speculation. This cannot help her avoid summary judgment. See Chappell v. GTE Prods. Corp., 803 F.2d 261, 268 (6th Cir. 1986) (an inference of discrimination cannot be supported merely by the plaintiff's own personal belief and speculation), cert. denied, 480 U.S. 919 (1987).

To survive summary judgment, it is plaintiff's burden to "present affirmative evidence." Anderson, 477 U.S. at 257; White, 533 F.3d at 389 (the "non-moving party may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial"); Lewis v. Philip Morris Inc., 355 F.3d 515, 533 (6th Cir. 2004) (plaintiff must "show sufficient probative evidence [that] would permit a finding in [her] favor on more than mere speculation"), cert. denied, 543 U.S. 821 (2004). Even construing all reasonable inferences in her favor for purposes of summary judgment, plaintiff has failed to establish a prima facie case at the fourth step. See, e.g., Weatherby, 454 Fed.Appx. at 489 (plaintiff failed to show that any protected status was a motivating factor for her termination, and thus, failed to present a prima facie case of race discrimination).

### 2. Legitimate Nondiscriminatory Reason

14

Moreover, even assuming a prima facie case, the defendants have articulated a legitimate non-discriminatory reason for plaintiff's discharge, namely, her objective and well-documented poor job performance during the initial probationary period.

### 3. Pretext

To show that the stated reason for her discharge was merely a pretext for discrimination, a plaintiff must point to evidence indicating that the stated reason: (1) had no basis in fact, (2) did not actually motivate the employer's action, or (3) was insufficient to motivate its action. Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 545 (6th Cir. 2008). A plaintiff may also show pretext by offering evidence that challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." Wexler, 317 F.3d at 578. "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" Chen v. Dow Chemical Co., 580 F.3d 394, 400 n. 4 (6th Cir. 2009). Plaintiff has not pointed to evidence that would establish a genuine dispute of material fact regarding pretext.

Plaintiff relies largely on her own allegations and speculation and has not produced evidence that would allow a jury to reasonably doubt the employer's explanation. Ample evidence reflects plaintiff's ongoing poor job performance during the probationary period. In fact, plaintiff admitted at deposition that she was not performing her job satisfactorily (Weldon Dep. at 27 Q: What about your

15

performance, was your performance up to snuff? A. No). **She admits she submitted her reports late and had at least one late case review (Id. at 241, 258-259). She admits she did not complete two interstate transfer packets on assigned cases despite being given sample forms and assistance from co-workers, a supervisor, and the quality assurance supervisor (Id. at 126-127, 135-136, 141). She admits that, despite resubmitting the packet several times, the packet still required substantial corrections (Id. at 141; Dep. Ex. G). She admits that to avoid further delay, Ms. Barger had to complete the plaintiff's first packet (Id. at 138). Plaintiff acknowledges that she never completed the second packet (Id. at 139; Dep. Ex. B). She admits she failed to contact an out-of-state agency for approximately 45 days after an infant was transferred out of state, although custody still remained with WCCS (Id.; Dep. Ex. F). She admits that her employer received complaints about her from prosecutors and outside agencies (Id. at 241). In sum, the employer's stated reason for plaintiff's discharge ("poor performance") had a well-documented basis in fact and was sufficient to warrant the termination of her employment during the probationary period.[3]**

**To the extent plaintiff suggests that racial discrimination (rather than poor job performance) actually motivated her employment termination, the defendants**

---

[3] **Although plaintiff red-lines as "disputed" certain assertions about plaintiff's short-comings in her job performance (¶¶ 16, 20, 22-24, 26-27, 29-31), plaintiff acknowledged these facts at deposition (Weldon Dep. at 120, 125-127, 130-131, 135-136, 138 141, 148, 241, 258-259). Plaintiff cannot contradict her own deposition testimony in an effort to create a genuine dispute of material fact. Plaintiff points to no relevant evidence to substantiate any genuine dispute of material fact regarding her poor job performance.**

point out (doc. no. 36 at 19) that an employer that is "willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class." Buhrmaster v. Overnite Transportation Co., 61 F.3d 461, 464 (6th Cir. 1995) (adopting the "same actor inference"), cert. denied, 516 U.S. 1078 (1996); Hartsel v. Keys, 87 F.3d 795, 804 (6th Cir. 1996) (observing that "it hardly makes sense" to hire workers from a group one dislikes only to fire them once they are on the job), cert. denied, 519 U.S. 1055 (1997); Damron v. Yellow Freight Sys., 18 F.Supp.2d. 812, 833-34 (E.D.Tenn. 1998) (observing that if an employer had discriminatory animus against persons in the protected class, it would not have hired the employee in the first place), aff'd by 188 F.3d. 506 (6th Cir. 1999). As already noted, after plaintiff left, the next two candidates offered the position were both African-American (Barger Dep. at 43).

Given the admitted problems with plaintiff's job performance that arose during her probationary period (i.e., low productivity, poor follow-through, unprofessional work attire, outside complaints, and deficient writing skills), plaintiff has not shown that the termination of her employment for poor performance was merely a pretext for discrimination. See Bender v. Hecht's Dept. Stores, 455 F.3d 612, 627 (6th Cir. 2006) ("we do not act as a super personnel department, overseeing and second guessing employers' business decisions"), cert. denied, 550 U.S. 904 (2007); Corell v. CSX Transp., Inc., 378 Fed. Appx. 496, 505 (6th Cir. 2010) ("time and again we have emphasized that [o]ur role is to prevent unlawful hiring practices, not to act as a super personnel department that

17

second guesses employers' business judgments"). Plaintiff has not demonstrated any genuine dispute of material fact as to pretext, and the defendants are entitled to summary judgment on this claim.

**B. Count Five: Plaintiff's Claim under Ohio R.C. § 4112**

Plaintiff also asserts a claim for violation of Ohio R.C. § 4112.02 against defendants Warren County Children Services, Warren County Job & Family Services, and Commissioners Ariss, South and Young. Ohio's anti-discrimination laws are modeled on Title VII, and federal case law interpreting Title VII is generally applicable to alleged violations of Ohio R.C. § 4112. <u>Plumbers & Steamfitters Jt. Apprtc. Comm. v. O.C.R.C.</u>, 66 Ohio St.2d 192, 196 (1988). As the same evidentiary standards and burdens of proof apply, resolution of the federal claim resolves the state claim as well. See <u>Hawkins</u>, 517 F.3d at 332 ("[a]ll references throughout this opinion to Title VII are therefore equally applicable to the plaintiffs' claims under Ohio Revised Code § 4112"); <u>Francis v. Davis H. Elliot Constr. Co.</u>, 2013 WL 941527, *4 (S.D.Ohio) (same). For the same reasons applicable to the Title VII claim, defendants are also entitled to summary judgment on plaintiff's claim under Ohio R.C. § 4112.02.

**C. Counts Three and Four: the Slander Claims Against Barger and Jacobs**

Plaintiff indicates that her slander claims are only "against the individual defendants" (doc. no. 18 at 7). At oral argument on the motion to dismiss, plaintiff's counsel clarified that he meant the two defendants (Barger and Jacobs) who are sued "individually" in the First Amended Complaint. Plaintiff, however,

18

indicated at deposition that she is *not* asserting a slander claim against Ms. Jacobs (Weldon Dep. at 218-219, 221). Defendants now move for summary judgment on those claims against Barger and Jacobs.

Slander may be either "per se" or "per quod." Plaintiff alleges both. The determination of whether a statement is slander per se or slander per quod is a question of law for the trial court. Matalka, v. Lagemann, 21 Ohio App.3d 134, 136 (1985); Dodley v. Budget Car Sales, Inc., 1999 WL 235861, * 6 (Ohio App. 10 Dist.) ("Whether a statement is slander per se or whether a publication is merely capable of being interpreted as defamatory, i.e., defamation per quod, is a question of law."). "In order for an oral defamatory remark to be considered slander per se it must consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, imputes some loathsome or contagious disease which excludes one from society or tends to injure one in his trade or occupation." McCartney v. Oblates of St. Francis deSales, 80 Ohio App.3d 345, 353 (1992) (citing Schoedler v. Motometer Gauge & Equip. Co., 134 Ohio St. 78, 84 (1938) and Restatement of the Law 2d, Torts, supra, Section 570). The alleged remarks by Barger and Jacobs convey no such meaning and do not refer to any criminal offense or "loathsome disease."

In slander per quod, a publication is merely capable of being interpreted as defamatory, and the plaintiff must allege and prove damages. NE Ohio Elite Gym. Training Ctr., Inc. v. Osborne, 183 Ohio App.3d 104, 109 (Ohio App. 9 Dist.); ("defamation per quod occurs when material is defamatory through interpretation

19

or innuendo"); <u>Dodley</u>, 1999 WL 235861, *6. Under Ohio law, the elements of a defamation claim are "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." <u>Harris v. Bornhorst</u>, 513 F.3d 503, 522 (6th Cir. 2008) (quoting <u>Akron–Canton Waste Oil v. Safety–Kleen Oil Servs.</u>, 81 Ohio App.3d 591, 611 N.E.2d 955, 962 (Ohio App. 9th Dist. 1992)); <u>Braun v. Ultimate Jetcharters, Inc</u>., 2013 WL 3873238, *20 (N.D.Ohio).

Plaintiff's slander claims lack evidentiary support. Plaintiff contends only that her supervisor Ms. Barger spoke with her about her inappropriate attire and did so within the privacy of her office with no one else present. According to plaintiff, Ms. Barger advised her that others felt her shoes were "stripperish" and inappropriate for court appearances (Weldon Dep. 167-168, 219, 222). Ms. Barger directed her statement only to plaintiff and to no one else (<u>Id</u>. at 222). Hence, no intentional publication occurred. Publication is an essential element of slander. <u>Cooper v. Grace Baptist Church of Columbus, Ohio, Inc.</u>, 81 Ohio App.3d 728, 736 (Ohio App. 10 Dist. 1992). Plaintiff has offered no facts to dispute the absence of the necessary element of intentional publication. <u>Walker v. Mercy Hosp. Assoc.</u>, 1978 WL 217087, *2 (Ohio App. 10 Dist.) ("there can be no recovery of damages for wounded feelings alone, resulting from a slanderous statement made to the person defamed but not communicated to any third person . . . plaintiff must prove

a publication consisting of communication of the slanderous matter to some person other than plaintiff").

To the extent plaintiff claims that another employee (Amy Worthy) in a nearby office inadvertently "overheard" part of the conversation, plaintiff acknowledged at deposition that <u>she</u> (plaintiff) was speaking loudly and repeating what Ms. Barger said to her (Weldon Dep. at 219 "I'm not a quiet toned person, so when she was saying that to me, I was repeating back what she was saying"). Plaintiff cannot blame Ms. Barger for any purported "publication" in these circumstances.

Moreover, expressions of opinion are protected under the Ohio Constitution and do not constitute defamation under state law. <u>Vail v. Plain Dealer Publ'g Co.</u>, 72 Ohio St.3d 279, 281 (1995), cert. denied, 516 U.S. 1043 (1996); <u>Fechko Excavating, Inc. v. Ohio Valley & S. States LECET</u>, 2009 WL 3119723 (Ohio App. 9 Dist. 2009) ("The Supreme Court of Ohio has held that opinion speech is protected and not actionable as defamation."); <u>Wampler v. Higgins</u>, 93 Ohio St.3d. 111, 117 (2001) (holding that the Ohio Constitution Article 1, Section 11 protects opinions from defamation claims). Plaintiff's slander claims are subject to summary judgment.

## VI. Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have fully briefed the relevant issues. The Court finds that oral argument is not necessary. <u>Yamaha Corp. of Am. v.</u>

21

**Stonecipher's Baldwin Pianos & Organs**, 975 F.2d 300, 301-02 (6th Cir. 1992); **Schentur v. United States**, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (observing that district courts may dispense with oral argument on motions for any number of sound judicial reasons).

Accordingly, the defendants' "Motion for Summary Judgment" (doc. no. 36) is **GRANTED**, with costs to plaintiff. This case is DISMISSED with prejudice and TERMINATED on the docket of this Court.

IT IS SO ORDERED.

                        **s/Herman J. Weber**
                        **Herman J. Weber, Senior Judge**
                        **United States District Court**